Allen Hammler F73072
P.O. Box 290066
Represa, CA 95671

In The United States District Court
Eastern District OF California
SACRAMENTO

Allen Hammler,

      Plaintiff,

    v.,

Zydus Pharmacev,
A Corporation (Corp.),
Trigen Laborate, A Corp.,
Rising Pharm, A Corp.,
Avhbrieanna Leal,
Raphael Barba, Brian Elledge,
Pham Mailan, Marina
Marchak, Gharakhanian,
MA Martinez, Olivia
Contreras, Miguel Chavez,
Christine Gonzalez, Rikli,
W. Halloran, Bell-Sprinkel,
Doe(s) 1-10, Defendants.

Case No. 2:22-cv-1251-DB (PC)

COMPLAINT
42 U.S.C. § 1983

[Imminent Danger]

DEMAND FOR BENCH TRIAL

A. Jurisdiction And Venue

    This is a Civil Action Authorized by
42 U.S.C. § 1983 to Redress the Deprivation of

Constitutional Rights and Violation there of --
Said Rights. This Honorable Court has Juris-
diction under 28 U.S.C. § 1331 and 1343(a)(3),
And as Injunctive Relief is being Sought to
address Imminent Danger 28 U.S.C. § 2201 and
2202 apply, Supplemental under 28 U.S.C. §
1367. Venue is proper under 28 U.S.C. § 1391(b)(2)
as the events giving rise to the Action took
place at Cal. State Prison Corcoran (CSPC.)[1]

     Plaintiff alleges that he has Exhausted
all Administrative Remedies relevant to
each of the Claim(s) herein via HC-602#(s)
20000261, 20000064, 20000373, 20000-
065, 20000375, 20000377, Notice-1,11,22.

     Further, Plaintiff alleges that as it relates
to all State Claims herein raised he has Com-
plied with Government (Gov't.) Code § 911.2 via
Forwarding the Mandated Claim(s) Form(s) to the
Office of Risk And Insurance Gov't. Claims
Program, each within six months of the date
of the alleged Incident(s).

     Said Claim(s) stated the Time(s), Place,
Cause(s), Nature, and extent of the Injuries
Suffered. The State had 45 days From the date
of the Claim(s) being Filed to Respond under

---

[1] In instances, but in other instances took place at
Cal. State Prison Sacramento (CSPS.) where Plaintiff is
currently Housed.

Govt. Code § 912.4(c) and Plaintiff alleges that each and every one of the Claims is Ripe For Litigation. #20007822, other(s) no Response.

## B. Plaintiff.

Allen Hammler, was and is at all times mentioned herein a Mental Patient in the Custody of the Cal. Dept. Of Corrections And Rehabilitation (CDCR.) Housed at Cal. State Prison Corcoran (CSPC.), Participating in the CCCMS. Mental Health Program. His current address is P.O. Box 290066, Represa, CA. 95671, Cal. State Prison Sac. (CSPS.), issues On-going.

## C. Defendants

(1) Zydus Pharmaceu, (2) Trigen Laborate, (3) Rising Pharm, are all three, individual Defendant(s), are Corporations(s) (Corp.) that Contract with the CDCR. They are Manu-Facturer(s) of Pharmaceuticals, specifically Venlafaxine, i.e., Effexor an Anti Depress-ant and Supplies their Product to the CDCR. under Terms of said Contract(s). Their Place(s) of Business are unknown.

///

(4) Ralphael Barba, (5) Brian Elledge, (6) Pham Mailan, 7. Garen Gharakhanian, (8) Marina Marchak, are all Five, at all times mentioned herein Employed by the CDCR. as Psychiatrists at CSPC. and each share a Primary Place of Business thereat.

(9) Auhbrieanna Leal, (10) Miguel Chavez, (11) Olivia Contreras, (12) Christine Gonzalez, (13) Jesse Rikli, are all Five at all times mentioned herein Employed by the CDCR. as Psych. Tech.(s) at CSPC. and each share a Primary Place of Business thereat.

(14) Martinez, is at all times, herein, mentioned a Medical Assistant (MA.) who is Employed by the CDCR. at CSPC., her Primary Place of Business.

At all times mentioned herein each of the named Defendant (s), supra, are alleged to have been acting under color of Law, and each and every named Defendant was the Agent of each and every other Defendant named and had the Legal Duty to oversee and Supervise the Conduct and Imployment of every other Defendant.

4

Each OF the DeFendant(s) are alleged to have had actual Knowledge of the Fact that PlaintiFF has a Pre-existing Heart Condition called WolF Parkinsons White (WPW.) a Condition that evidences Complications via PlaintiFFs becoming Dizzy For his Equilibrium being effected by Irregular Heart Beat that Can end in Sudden Death. Further, all DeFendants Knew and todate Know that iF PlaintiFF is caused to go without his Medication, i.e., EFFexor, and begins to go through Withdrawals his Equilibrium becomes effected and mimics Symptums oF WPW. and Possible Death.

Moreover, each oF the DeFendant(s) had and have todate the actual Knowledge that PlaintiFF is unvacinated to Covid-19 For Primary Reason that he has WPW. and the Vacines can harden Heat and Arteries Leading to Death but have in instance(s) alleged below unreasonably exposed PlaintiFF to Covid-19 via their being Deliberately IndiFFernt to all the above and in On-going manner exposed PlaintiFF to the New Veriant on 5,27,2022 via meds being handled in negligent manner that has been Continually pointed out to all, even just Few day prior Quarantining him on 5,27,22.

5

Each of the named Defendant(s) are herein Sued in their Individual Capacities a Direct and Proximate Result of their acts and Omissions. Zydus, in Official Capacity also

## D. Factual Allegations

1. For a time Prior to the date of 3,4,20-20, Plaintiff, having signed a Legal And Binding Bilateral Contract, i.e., a CDCR. MH-7450 (Contract) with Psychiatrist and Agent of the CDCR. acting on Behalf of the CDCR. and Director Ralph Diaz, Plaintiff was being Provided Psych. Medication (Effexor) in what he was led to believe was a Pill that was 75 milligrams (Mg.) in the Dose, a Two Tone Capsul in Gray and White.

2. Prior to date of 3,4,2020 Plaintiff and other Patient(s) in the Mental Health Ward/Unit when issued their Medication Were issued it From their own Respective Labelled Packages. However, the CDCR. Inacted a Process of issuing Patient(s) their Medication(s) From the same single Package on or about three months Prior to 3,4,2020.

///

3. Having inacted the Process of issuing all meds From one Package to supply all Patient(s) that were Prescribed EFFexor, DeFendant Leal and the other PT.(s) started out of the Blue, unexpectedly, conveying all Pink Pills to PlaintiFF rather than the Two Tone Gray and White (G/W.) he had been being Provided.

4. Having asked Leal why the Pills had been Switched, i.e., were now Pink Leal Explained that it was istill EFFexor but only From a DiFFerent ManuFactoror than the G/W. Pill.

5. Continuing to be provided only the all Pink Pill PlaintiFF noticed that the all Pink Pill was having a Physical AFFect on him and a chemical and integral Mental AFFect that the Prior G/W. never had on him. In noting the contrast in AFFect the PlaintiFF started asking to be Provided the — G/W. Pills instead of the all Pink and explained to Leal and the other PT(s) his Reasoning, i.e., substantial up-set stomach all day, Drowsiness that was never beFor an aFFect accompanied by a Feeling of being "High" rather than being on the stable Plateau

oF the C/w Pill's Provision.

6. Leal told PlaintiFF that the C/w. Pill was out oF stock and the all Pink was all she and the other PT. were being Provided Sence the change in Providing all Patients their Meds FRom One Package had been implimented.

7. Having Indured the Anguishes that came with Taking the all Pink Pills For as long as he could and being of the Notion that the BeneFit oF the Medication was no longer outweighed by the Affects day to day PlaintiFF stopped accepting the all Pink Pills and on the date oF 3.20.2020 met with DeFendant Mailan re all the above stated.

8. Having also spoken to Mailan about Side Affect that engenders Temp. Change making him cold Mailan was asked to prepare an Order Providing For PlaintiFF to be Provided Clothing to address the issue. In notes she States that she sought to do so but in the Course could not Fore having been told by Sergeant (Sgt.) Navarro that the Clothing had been sent out to another Facility which

precluded the clothing being provided. This was a False Statement made by Navarro in endeavor to Leave Plaintiff to suffer, and Mailan accepted it at Face value where she owed Plaintiff a Duty of Care to address the side affect, but chose to neglect the Duty in Loyalty to Code of Silence and Navarro where she knew he lied.

9. Mailan, having failed to correct all the above issues where she could have Plaintiff continued to be selectively Provided his Medication by the PT(s) having one to pro-duce the Prior given C/w on one date that allowed him to take the medication then on the next date or For two to Three days Following Plaintiff would have another PT. to tell him that all they had were the all Pink (A/P) Pills Forcing Plaintiff to Decline accepting that A/P. to avoid the issues with it.

10. Having had Mailan contact the Prison's Pharmacy some one placed a Note in Plaintiff's Records that none of the PT.(s) would allow Plaintiff to read but Defendant Chavez on the date of 3,28,2020 in Passing out meds told Plaintiff of the Note and staded "I never gave you the wrong Pills have I?" in what

Plaintiff believed was an attempt to Dissuade him from including him (Chavez) in the Controversy. Undetered, Plaintiff told Chavez that he had given him the G/W. just as the other PT(s) had Provided.

11. "I never gave you no Gray and White Pills, you didn't get them From me!" Chavez stated to Plaintiff surprise at his Ability to Deny a Fact that they Both Knew the truth (of, Chavez at that time tried to give Plaintiff the A/P. and Plaintiff Declined -- informing Chavez that he (Chavez) should Chart the Reason that the Meds were not Conveyed rather than noting that they had been refused stating "I want to take my meds but I cant because they still haven't addressed the issues. So, I'm not Refusing I'm being Denied meds," Plaintiff explained. "No, your Refusing," Chavez said then walked away, being not escorted by a C/O..

12. On the Following date 3,29,2020 the same Facts played out ending with Chavez refusing to chart/Record in the Records that Plaintiff was denied and he told Plaintiff that he would Chart that he Refused the Meds then left.

13. On the date of 3,30,20 Plaintiff again spoke with PT. Leal re the matter but being escorted by Sgt. Florez she did not have time to converse in Depth and told the Plaintiff she'd return, but never did.

14. On the date of 3,31,20 Leal did med-Pass and attempted to give Plaintiff the G/P. Pill. Plaintiff told Leal that he was not Refusing his medication but if he could not be Provided the G/W. Pill that she had been Providing beFor she should Chart/Record that Reason. Leal at that time told Plaintiff "Technically your ReFusing," then walked away.

15. A short time aFter Leal was on the Tier and Plaintiff asked her if she had Charted that he did not Refuse but was unable to take the medication For the Reasons noted. Leal responded "I already told you" in a harsh Tone and Kept walking.

16. ShiFt having Changed and Leal having LeFt the Psych. Rounds to be done by 3rd Watch PT. Selliers made contact with the Plaintiff and in going through the List oF Questions she asked why he had not

11

taken it. Plaintiff explained that he had been being given the A/P. rather than the G/W. of prior dates. It was at that time that Selliers pulled up some pictures of pills on the screen of her Lap-Top.

17. Showing Plaintiff the different pills in Doses and colors she told him "There is no such thing as a 75 mg. Effexor Trust me. I've been doing this for Ten years and I've never seen a 75mg in that color. Thats why we normally have to give you guys two or three of these smaller ones" she told Plaintiff pointing to the screen of her Lap-Top where a small G/W was shown.

18. Plaintiff expressed that he now understood why Leal and Chavez had been responding to his questions in the manner, and told Selliers that he believed the Reason that the A/P. Pills were having the Affect on him is because Leal and the other(s) had been giving him the wrong Dose, the wrong Pill the -- whole time, fore neglecting to use the Scanner to cut Corners. Selliers, seeing that her Honesty had opened a can of

12

Worms Pleasantly brought the exchange to an End and Left.

19. Few minutes after Leal who was working over time and had been informed by Settees of Plaintiff new-Found Knowledge went to Plaintiff's Cell. "Hammler," She called Plaintiff by name a Big Fake smile on Face. "I don't want to talk to you now, I Know what you did, get the Hell away From my Door." Plaintiff told her in a Low but cold Tone. Leal responded by giving him a Look of Disbelief then Left.

20. Going back to the Office Leal there-at, in endeavor to cover her actions E-Mailed DeFendant Elledge Stating:

"I/P. Hammler has been reFusing his Effexor in the AM. He insists that he can only take the two tone Pill, however, we are not always gua-ranteed which manuFacturer of medications we receive From Pharmacy. Per MHND Pham's notes on 3,20,20, I/P. Hammler expressed these concerns to her aswell. Do you Know what we can do in a situation like this?" (emphasis added)

///

13

21. Leal sent the E-Mail at 6:50 pm. on the date of 3,31,2020 Fifteen minutes after she left Plaintiff's Cell and Defendant Barba on 4,1,2020 at 8:15 am. Responded:

"He has the Right to Refuse. I will Taper him off by decreasing the Dose to 37.5 mg. For two weeks then discontinue. If he continues to Refuse notify me and I will stop Effexor. Also I would have his MHPC see him then Discuss her/his Findings with one of the Psychiatrists to make a Final Decision and then he could be refered back to the Assigned MHMD for a Medication Evaluation." (emphasis added).

22. Barba, First acknowledges that the Plaintiff is exercising a Right then goes on to state that if Plaintiff continued to act to Exercise that Right he will "Stop Effexor" i.e., Deny Plaintiff Treatment via the Medication that he (Barba) was well aware that Plaintiff wanted to continue Receiving and had Signed a Binding Contract to so Receive as is alleged in Paragraph No. 1, supra. Here, Barba's actions were Retalitory, Admittedly, and advanced no Medical/Mental Health -- Benefit of Penological Goal where he was

14

Fully aware of Plaintiff's reason for being Charted as Refusing noted in Leal's E-Mail, and Prior Charts he was mandated to Review befor he took any Action, owing a Duty of Care to Plaintiff, the Patient.

23. Barba having acted to Lower the Dose of Plaintiff's Medication without First Consulting him wrote the Order at 8:11 am. However, PT. Torres acting to do med-Pass on 4,1,2020 prior to tried to give Plaintiff the A/P. Pill and he Declined explaining to her as he had all other(s). Torres Still charted that Plaintiff had taken the Pill in Plaintiff's belief that she could in some manner or other Latter Deny being informed, slandering Plaintiff.

24. On that same morning (4,1,20) at Psych-Rounds PT. Contraras acted to Preform them for Plaintiff and in seeking to Document, Further, the issues Plaintiff spoke to her re the reason he had not taken the meds that very morning with Torres there and Listening to him. Contraras told the Plaintiff as she regarded the Computer "But you took it this morning, and it looks like they Lowered your Doze." Plaintiff

in becoming confused questions Contrares
and she showed him on the Lap-Top that
the Dose had been Lowered and he had
been Charted by Torres as having taken
the A/P. that morning, and Befor Barba
had entered the Order Changing the Dose.

25. Contrares then Refused to Document
that Plaintiff had informed her that Torres
Falsely Charted that he'd taken Meds that
morning and when he (Plaintiff) asked For
her to aid him in writing a Medical Request
she Refused all in Code OF Silence, denying
Plaintiff Health Care and Aid where CDCR.
Form 7362, Request Forms, state that she
was mandated to write it For Plaintiff
her Denial precluding his expressing issue
in Violation oF the First Amendment.

26. From the date of 3,26,20 to 4,1,20
Plaintiff having been Denied his medication
became Depressed and started to go through
Withdrawal noticing the Physical Change
in the Chemical Balance that Barba regarded
when he spoke oF the need to "Taper him off"
in the E-mail, but without the Benefit of
gradual steps Plaintiff Forced to suddenly
deny his Body the Effexor it had become

Relyant on was subject to Physical Pains where his Bodily Functions were Factually altered.

27. On the Following date of 4,6,2020 Plaintiff in still having issues with The PT(s) and their selectively issuing him one color pill on one date and another on the next had Defendant Leal to contact him again relevant to the matter. In speaking to Leal Plaintiff had her show him the E-Mail that she had sent to Elledge of-which Barba had intercepted.

28. Showing him the E-Mail Leal told Plaintiff that the Problem was the Manufact-urer(s) and the manner in-which the System used to scan the Pills is Designed. Leal claimed that she and other PT(s) can only give a Patient the Pills that scan and "most of the time they dont even register so we have to just scan what ever one do give you the one we're sapose to, cause if we dont hardly nobody would get their meds," she informed

29. "We are all Licensed, so trust me we dont like it...." Leal stated. The two spent a Few moments speaking in the line

17

and Plaintiff having Built a Professional Relationship with Leal over the time he'd been in the Unit believed she ment well and seeing that she was concerned about her License told her that he had prepared a CDCR HC 602 re the issue but informed her that he would not be "Coming After her, but would be going After the Manufacturers...." For allowing their Products to be used in the manner where they are Contracting with CDCR. Leal instantly became Cheerful.

30. On subsequent date of 4,10,2020 Leal Performed Plaintiff's Psych-Rounds and Plaintiff informed her that he believed that one of the Passes he received For that date was to meet with the Psychiatrist in regard to the Medication being Lowered and other on-going issues. Leal at that instance checked the Computer and told Plaintiff that the Pass was in Fact one to meet with Defendant Elledge.

31. It was Jointly decided that Leal would attend the meeting that she could explain her E-Mail Where she in her own words "[D]idn't mean For them to do that" i.e., Lower the Dose of the medication

18

and Threaten to Discontinue it.

32. Plaintiff in attending the meeting informed Elledge that Leal wanted to speak to him regarding the E-Mail and Defendant Martinez exited the Office to call her in. The meeting ended with Elledge prior to -- Expressing that Barba should not have lowered the Dose without Consulting Plaintiff and Agreeing to Return the Dose to 75mg. the Order to include a note that only Crus. Pills are to be given Plaintiff.

33. The meeting concluded Martinez produced a CDCR, MH-7450 Contract and asked Plaintiff to sign it. This occurring at the time the the Escorting C/O. was there attempting to HandCuff Plaintiff to take him back to his cell. Plaintiff told Martinez that he wanted to read it before he signed anything... " The C/o. waiting was willing to do so until Plaintiff was done but Martinez in an apparent Rush told Plaintiff "Just sign it, it's a Consent For your meds thats all." Plaintiff told her that he would not and she agreed to allow him to take it to the cell and she would pick it up in a Few minutes.

34. Arriving at his cell Plaintiff was still in Handcuffs being uncuffed when Martinez arrived. Having given Plaintiff no time she again as soon as he was uncuffed Demanded he sign the Contract. Plaintiff told her he had a Right to read it First and she responded "Your not gonna get your Pills if you dont sign it, so just sign it. Plaintiff refused and she told him "Alright, gimmi it I'm gonna tell Dr. Elledge that you refused to sign it." It was at that time that Plaintiff told her she'd be sued For slander and Refused to give her the Contract she left.

35. Continuing to have issues with PT(s) but at that Juncture for their trying to give him Two Pills of 37.5 mg. to equal 75 these being G/W. Pills but then on other dates attempting to convey Two Pills of 7.3 with "E" in color of Pink and Gray the issue continued but just now it was smaller Pills and two rather than one.

36. On 4,10,2020 prior to attending the meeting Defendant Chavez did Med-Pass and again engaged Plaintiff in re the conveying of the G/W. Pills. Chavez in endeavor to Demon-

strate that the Computer System would not allow him to have given Plaintiff the wrong Pills on Prior date took the Package of G/W. 37.5mg. Pills From the Cart and tried to scan the Pack. He claimed it did not scan the picked up the Package that contained the all Pink Pills, A/P., and scaning it claimed it did Scan, then tried to give Plaintiff one of the A/P. Pills.

37. Plaintiff told him that there was a note in the system that state that he is only to be given the G/W. and declined the A/P. telling Chavez not to Chart him as Refusing but Document the Reason he had not taken the A/P.. Chavez told him he would Chart that he refused and the two Argued ending with Chavez walking away Loud talking "Its always a Problem with you!" he shouted.

38. C/O. Fugate hearing asked "Whats Wrong?" and Plaintiff listened while Chavez began to explain and when Chavez entered into Details of Privileged matters Plaintiff yelled at him "And if you Keep talking to Fugate about my medical Treatment I'm gonna sue you For a HIPAA violation." Fugate

21

1  jumping in yelled "Shut the FucK up," and
2  approaching PlaintiFF's Cell door told him
3  "Oh, you wanna Loud talk me behind that
4  Door you little Piece oF Shit. Quit being a
5  Cell Soldier!" Fugate yelled turning to
6  leave ("Cell Soldier," A Prisoner/Patient who only
7  has Heart to speak Brave Safe inside their
8  Cells where C/0(s) cant Beat them, normally
9  while their Restrained by Hand-cuFFs, Hands
10 behind them) ~~See Exh "A", Witness Declarations~~.
11
12     39. No less than a minute latter
13 Chavez holding up a PacKage oF Pills said
14 "Check these out." Fugate standing beside
15 him. "I told you I was done, your disrupting
16 my Holliday, now leave me alone," PlaintiFF
17 said in a low Tone having Fell into state
18 oF Depression seeing that he would not
19 be able to truely Observe Passover fore
20 being Forced to write notes re the instant
21 Events For Record.
22
23     40. It was at that time that Fugate
24 told PlaintiFF "Scared little Bitch. First Chance
25 I get I'm gonna Break you in half," his
26 Face twisted in contempt. The two then
27 leFt. A 9:23 am, a Female went to Plain-
28 tiFF's Cell and Rudely announcing herself

22

as the Pharmacy Manager claimed she
was there to see if Plaintiff was going
to take his medication. seeing her Tone
was ill Plaintiff told her he was going to
add her to the Law suit and Thanked her,
at the subsequent Meeting with Dr. Elledge
spoke of it all.

41. On the Following date of 4,12,2020
Chavez again did Med-Pass and tried to give
Plaintiff Pills that he was not allowed to
give, i.e., the Pink and White 75 mg. that
he had shown him on the prior date of
4,10,20. Being told by Chavez that he could
choose "Pick One", Two G/W 37.5 mg or One
Pink And White 75 mg. Plaintiff accepted
the Pink And White (P/W.) For Evidentiary
Value and Kept the shell of which he
Completed a Declaration and Taped the Pill's
Shell to, dated 4,13,20. Exh"B", Doc. noted. (1)

42. On the Following date of 4,13,2020
Defendant Leal Did Pill Pass and attempted
to give Plaintiff Two G/W Pills of 37.5 mg.
and in endeavor to Document further the
issue For Future use Plaintiff asked Leal
to give him the P/W. that Chavez had
given him the date beFor. Leal told him

(1) And other(s) re similar events.

23

that she could not Fore the Order said
only G/W. Pills were to be conveyed and
said she did not Know how P/W. was given
and to Prove it showed Plaintiff that the
Package of P/W. Pills would not Scan.

43. In understanding that she had
just inadvertently helpt Plaintiff prove
that Chavez had violated Policy and had
given Plaintiff Medication that he Knew
was not in the Orders Leal tried to
Placate Plaintiff "No, I can give it to you
but it won't Scan. Do you want the Pink
and White one?" she asked. "I want the
One thats Big like the Pink and White
-- One but is Gray and White like you
were giving me beFor all this Started,"
Plaintiff told her. "So, you dont want your
Meds?" she responded. The two spoke Briefly
re the matter and Leal told him that she
would come back, all being witness by the C/o.
Escorting her ~Exit~, COER. 22 Form 4, 13, 2020.

44. At 8:08 am. Leal returned with
another Male in Plain Cloth5 (Jeans/Etc.) The
Plaintiff asked who he was and he responded
Talk to her," in a Contemptous tone. Leal
Stated that the Male was there that no

24

Accusations could be made.

45. "Okay, if your here to be a Witness thats Fine. When I hear Witness I think Legal. So, look get a sickcall Form and you can be the one to Fill it out," Plaintiff told the male. Leal jumping it to talk over Plaintiff, he told her "Look, if your not gonna let me talk it's not gonna Work. We cant both talk and communicate," he told her in a calm tone. "Come on lets go," the male told her and they left.

46. At 9:35 am. the male returned and having a Lap Top with him to do Psych-Rounds Plaintiff believed him to be a P.T. in street cloths. "Mr. Hammler," he said in comical Tone all Nasal and High-Pitched. "I got the sick-call Form For you. My supervisor told me I dont have to Fill it out for you. The Computer says you can do it," he added.

47. Plaintiff explained that his hand was injured (swollen) and Rules mandated that he as a Health Care Employee aid him that he not be Kept From expressing his Medical needs in violation of the First Amendment. This Plaintiff tried to show him

25

in Text upon the Form and he responded
"I'm not gonna read it and I'm not
gonna Fill it out For you." Plaintiff then
asked For his name and he refused to
Provide it going into asking questions in
endeavor to incite Plaintiff.

48. "Are you suicidal?" he asked. "No,
give me your name" Plaintiff responded.
"Are you Suicidal?" he repeated. "Give me
your name Ass-hole" Plaintiff said. "Good,
Keep it up and I'm gonna 115 you" He told
Plaintiff threatening to issue him a Rules
Violation Report(RVR) For his Protected
Conduct of voicing his Opinion of his
Character as an "Ass-hole" an act of
Retaliation. "Fuck you," Plaintiff told him
"now I'm gonna sue you For Violation
of First Amendment and Retaliation...."
He just walked away.

49. Subsequently on that date Leal in
working overtime Aided in taking Plaintiff's
vitals when he was sent to TTA/CTC.
to have an EKG. Completed and in doing
So Leal in her manner of Sexualizing
interactions with Plaintiff and other
Patients in the Ward when Placing the

Pulse monitor on Plaintiff's Finger she had trouble Placing it and told him to "stick out a Finger" Doing so Plaintiff Playfully gave her the Middle Finger "I like that one" she said Laughing, Class Joing in on the Joke. Leal would latter chart a note in Record to account blaming Plaintiff For her sexualizing the exchange.

50. In noting vitals Leal also had Plaintiff to point out that his hand was Swollen the Reason he needed her and the Male to complete the Sick Call Form For him earlier in the day of which they had Refused placing circumscription on his Free Speach, the Test of Turner v. Safety, 482 U.S. 78, 89 (1987), applying.

51. Having while awaiting Transport to be taken to TTA. Plaintiff spoke to Leal re their issues from earlier and having always had a Soft spot for the Pretty PT. and her charm as most in the Unit had he smoothed things over with her and she agreed to send another E-Mail regarding the Order that it be Fixed and the 75 mg. Pill be Procured

52. At or about 8:00 pm that night Leal did Pill pass escorted by C/O. Perez and Plaintiff made contact with her. Asking if she had sent the E-mail they'd spoken of earlier when she did his vitals. She told Plaintiff that she had done so. Plaintiff -- questioned further if she had in the E-mail noted that he had told her he'd been given the P/W. by Chavez the day before and she told Plaintiff that she had omitted the fact. Plaintiff asked her to go back to add it and she refused taking an attitude she yelled "I'm not gonna do that," then stormed away her face scrunched up in Disgust.

53. Becoming Angry with her Deception and evidenced intent to Protect Chavez -- rather than Honor her Duty of Care to him Plaintiff yelled after her "Alright, Sence you want Play Pussy Games and string (in) all these Different People in, what we talked about is off. I'm comen after you now. You keep tryin ta twist me. Now I'ma twist your Ass up." Leal responded "Is that a Threat!" turning and walking back to the Door, to Look Plaintiff in the eyes, her own Anger noticable. "Its a Legal Fact!" Plaintiff told her understanding the Trap

28

that her words held and Threat of RVR,
they Leveled, a Well Documented Pattern
of Retalitory conduct PTis employ.

54. Leal then returned to the Office
And in Concerted Conspiracy with the
Male PT. From earlier now Known as
Defendant RiKli Falsified an RVR. therein
Slandering PlaintiFF via Libel and Prepared
False Charts in relation to the Events
in Retaliation For PlaintiFF's exercising the
Right to Free Speech in telling her that
now he'd be coming aFter her Civilly and
not just the ManuFacturer(s).

55. RiKli in OFFicial Records Falsely
Stated that he was accompanying Leal
and C/O.Perez in endeavor to give
Creadence to Leal's Lie. But, Perez a
Sworn Peace OFFicer in the line oF Duty
Signed a CDCR. 22 Form Stating that RiKli
was not Present and noting that Leal had
Omitted Facts From her RVR. in order to
have PlaintiFF's speech viewed as a Threat
oF Violence and not a Law suit as it Was.
Ext. "D", 22 Form dated 5,4,2020, another
dated 7,12,2020, both signed by Perez.

29

56. Continuing to have PT(s) selectively issue his meds and force him to go through Withdrawal(s) of and on Assaulting his Biological Functions and Chemical Makeup the Plaintiff asked to see the Psychiatrist again and had Defendant Marchak meet with him on 4, 25, 2020.

57. Durring the meeting with Marchak Plaintiff explained all the above alleged to her and had Marchak to show him some Pictures of Different color Effexor Pills on the Computer, in color after he had shown her Black and white Pictures. In her showing him the Different Pills she told him that there were not any 75mg. Pills in G/w. engendering Argument where she attempted to Defend PT. telling him that PT(s) dont just give Patients which ever Pills they want.

58. Plaintiff spoke to her regarding side effects of Effexor that causes him to be unusually cold an acknowledged Chemical Change to the Body Known as "Vasmotor," and just as he had asked -- Dr. Mailan to act to Prepare an Order, i.e., a Chrono "128-C" to have Clothing be-

Provided to address the Unconstitutional
exposure to the Elements in Violation of
the 8th Amendment, Plaintiff asked
Marchak to so act.

59. Marchak, rather than address
the issue tried to convince Plaintiff to
stop taking Effexor and began taking a
"Mood stabalizer" telling him that she thought
him Bipoler. She then suggested that his
refusal could be grounds for her to force
him Keyhea Penal Code § 2602. At which time
Plaintiff admonished her that she would be
Sued for her threat to force him in re-
sponse to his exercising Right to have her
address the issues with the current
medication and side effects where he
was not Diagnosed as Bipolar to be placed
on mood stabalizer nor had he ever been

60. Plaintiff ended the meeting and
having had Sgt. Aranda at the end tell him
and Marchak that a Chrono was needed to
have the cloths Provided she left and on
her way out in thick Accent told the
Plaintiff " You should'da had'da been Nicer
to me and I help you, but ! " She stated
Mockingly and then Prepared notes Evidenc-

31

ing her Negligence and Deliberate In-
difference wherein she called Plaintiff
"Manipulative", and "Boundary splitting" to
say that his use of side Effects is only
to obtain cloths, as C/o(s) alleged.

61. Prior to the date of 4,13,2020
the date that Plaintiff had Leal and Rilli
Falsify Charts and the RVR..Sgt. Navarro had
gone to Plaintiff's Cell and told him to
Pack his Property because he was to be
moved to another Cell on the other side
of the Ward. Questioning Why he was
told by Sgt. Navarro that it was in Order
to Keep him From having contact with a
Staff member. Knowing that such move
was illegal and that only one Staff--
member could via such move avoid having
contact(Leal) Plaintiff told Navarro that
he'd be sued if he tried it.

62. Navarro told Plaintiff that Leal
had not asked him to move him but he
From speaking to her re her and Plaintiff's
"Bumping Heads" he had thought of it and
added that he would let Plaintiff pick
From any open Cell. Plaintiff declined and
admonished that he would not allow himself

to have her use her Looks to compell male Staff member(s) to Pressure him, as she is Known For doing or in the course has had those that Seek her Favor act.

63. On Following date of or about 4,26,2020 Plaintiff inside his Cell heard C/O(s) Vera, Fugate and Sgt. Navarro -- Speaking of a Patient that they were informed was suffering a mental/Break and Screaming, etc. "Let's put him next to Hammler," Vera Said. "I'll bet he wants us to move him now," Fugate saide. "Oh, hell yeah," Sgt. Navarro Said and a short time after the Prisoner was placed in the Cell next to Plaintiff. (Prisoner "Von")

64. With said Patient Screaming all day and night Vera and Navarro would Show up say things to incite him and then go to Plaintiff asking if he wanted to move "yet." On 4,27,2020 Plaintiff activated C.I.T. and Reported it to the on-call Psychologist Santillan.

65. On the Following morning P.T. Gonzalez (Christine) did med-Pass and the mentally Disturbed Patient not being on a

33

1  Penal Code §2602 Order Declined his Meds,
2  as was his Right. C/O. Vera, Fugate, and
3  Sgt. Navarro having entered the section
4  asked Gonzalez if she had given the
5  Prisoner (#174) his meds. She told them
6  he Refused at which time Navarro had
7  her give the Pills to him and while she
8  stood their and watched, allowing it,
9  the (/OB) forced him to submit to Cuffs
10 , Pulled him from his cell (#174), stood
11 him against the wall inside the shower
12 that they told Tower to open and Beat
13 him until he swallowed the Pills that
14 they had force into his mouth, Navarro
15 Saying Open your Fuck'n mouth" and the
16 sound of a Blow landing, then "swollow
17 it!" Followed by another Blow, "Help,
18 they're trying to Poison me," the Patient
19 said.
20
21       66. Having Forced the Pills down #174's
22 Throat they placed him back in his Cell
23 and talking the Cuffs off he yelled
24 over and over "help they made me --
25 swollow Poison" Gonzalez walking on
26 as though she had not just aided in a
27 Felony using Defendant's Products (Pills)
28

34

67. Continuing to have all the above stated issues due to each of the named Defendant(s) leaving him to Suffer Plaintiff on the date of 5,28,2020 met with Psychiatrist and Defendant Gharakhanian and in doing so had him tell him that he had scheduled him to see him due to PT(s) informing him that he (Plaintiff) had been Refusing his medication.

68. Plaintiff told Gharakhanian (Dr.) that the PT(s) had been Falsifying the Charts to cover their actions of Selectively conveying Pills in Dose,s they Choose, etc. Plaintiff tried explaining to Dr. that he had been Forced to go through Withdrawals a Direct and Proximate Result with Dr. interjecting "But I see here that you took your Pills this morning" he told Plaintiff regarding the Computer.

69. Plaintiff at that time explained that he had accepted it but unwillingly as it was Left on the Cell Door, etc. It was then that Dr. spoke re Defendant Marchak's note wherein she Recommends a Mood Stabalizer and Discontinuing Effexor. Plaintiff told him that he was not Bipolar and would not take Mood Stabalizer. Dr. at that time tried to end the

35

meeting and Plaintiff asked if he would
act to address the selective conveying of
Pills to ensure that he not be Forced to
go through Withdrawals again "We will see"
Dr. said. "What do you mean. You are
mandated to Fix it." He ignored Plaintiff.

70. Continuing to ignor Plaintiff he
Spoke to Defendant Martinez asking if
Plaintiff had signed the Contract. "I tried
but he refused to sign it." Martinez told Dr.
leading him to believe that she had on that
date Presented him with the Contract
and he Refused. But she had not attempted
to have him sign sence the last date
of 4,10,2020; as is alleged, supra, at
paragraph no. 33-34.

71. Hearing Martinez's answer Dr. --
Stated "Well, if he wont sign then I'm
gonna Discontinue the Effexor." Becoming
up-set at being ignored Plaintiff told him
"Go ahead you Idiot, I'm gonna Sue you for
that." The meeting was concluded and on
the Following morning Plaintiff was told
that his Medication had been Discontinued.

72. Plaintiff being amenable to Depress-

36

ion over the following days became Emotion-
ally challenged and date of 5,29,2020 to
6,3,2020 -- he cried uncontrollably needing
the Medication moreso being Affected
by the Video Footage of the Georg Floyd
Murder and it's paralel to his own Beating
that occurred on 5th of September 2019
wherein he sustained a fractured skull,
Three fractured Ribs one Displaced and
a Brused Lung from C/O(s) Beating him.
It was in Effort to Cope with this
that Plaintiff consumed the Two G/W. Pills
of 37.5 mg. the day befor where he would
normally have held his ground.

        73. Having gone through withdrawal
again as a Result of Martinez's slandering
him in telling Dr. he (Plaintiff) had refused
to sign CDCR. MH-7450 on date 5,28,2020
engendering the Medication being Discontinued
Plaintiff, subsequently met with Dr, and
Elledge in endeavor to have his Effexor
reordered and had Both refuse telling him
that as he is Diagnosed to be Bipoler they
would cause him Danger due to Effexor
being a Medication that conter-acts to
such Diagnosis. Exh"E", Records/Charts from
date of 5,28,2020, Four Pages

37

74. Plaintiff, alleges that Dr. and Elledge refused to reorder the Effexor not to further his Treatment but to keep Plaintiff from holding PT(s) accountable and from being able to say that the issues are not being addressed in their theory that if Plaintiff is not on any Medication he'll have nothing to complain of.

75. On subsequent date of 11,10,2020 Plaintiff met with Dr. Tatomer and in explaining to him all the above was told that he (Plaintiff) had never been Diagnosed as Bipoler and had Tatomer that day order the Effexor restart at 75mg. and Plaintiff has sence been consistanty provided the P/W. Pill. ~~Exh."F", Contract date 11,10,2020~~

76. Now, with the Effexor being able to be taken without Doses precluding, the Plaintiff has had a number of PT(s) to in endeavor to intentionally compel Plaintiff to decline accepting his Pills, to in his seeing them, Handle the Pills with un-cleaned and Tainted, though Gloved Hands via Touching the Cell door locks, their Arm/Face Bare Skin or other objects. Then Touch the Pill with the same --

38

hands to place them in the cups to con-
vey where Pills are mandated to be
Popped from Packages Directly into the
cups and not Touched, at all. "Covid-19."

77. These actions of the PT(s) are
believed to be in Retaliation For Plaintiff's
Submissions of Complaints regarding the
above alleged facts and other instances
of Medication being Mishandled, by them,
and Co-workers, where in the Housing
Unit a Covid-19 out-break has occurred
engendering most of the Patient(s) becoming
infected and a number of PT(s) and C/O(s).

78. On date of 1,22,2021 Hernandez
a male PT. who Plaintiff has repeatedly
informed supervisors conducts himself in
a Dangerous manner, Hernandez did Pill Pass
and approaching Plaintiff's cell he First han-
dled the Lap-Top's Mouse, then pulled the
sleeves of his Black Hooded Sweat shirt
up to rest at his Fore-Arms. All this done
he Popped Plaintiff's P/W. Effexor out from
the Package into his Hand and with the
those same Tainted Possibly Covid-19
carrying Fingers Hernandez grabbed
the "Pill" from his Palm and placed it in

39

the cup attempting to hand it to the Plaintiff who has an underlined and Pre-existing Heart Condition and has not Contracted Covid-19 despite the out-break in the Housing Unit.

79. Having Seen the Careless Handling of the Pill, Plaintiff asked Hernandez to give him a Pill that has not been Touched i.e., Popped directly From the Package into the cup in accord with Policy. It was at that time that Hernandez Pored the Pill From the cup into his Hand again and using Fingers held it up "You want this or not," he stated smiling Sadistically. "No I don't -- want that," Plaintiff told him annoyed at his intentional attempt to cause him Emot-ional Distress. C/O. Beltran who was his Escort was asked to alert the Sergeant that there was an issue. This happened at 7:20 am.

80. At 10:15 am Defendant Gharakh-anian (Dr.) via Skipe/Face Time on Lap-Top was carried to Plaintiff's Cell Door by a Medical Assistant (M.A.). Dr. told Plaintiff that he was there because Plaintiff had not been taking his medication on one date

then taking it on others. Plaintiff told
him of the PT(s) mishandling the pills and
attempting to avoid Covid-19 precluding
his (Plaintiffs) accepting the pills Plaintiff
told him of Hernandez's actions on that
morning only hours befor and asked
Dr. to Facilitate his being provided the
pill he was precluded from accepting.

81. Dr. instantly started speaking
of changing Plaintiff's medication to a
Different one and when Plaintiff told him
that the issue was not with the type
pill but the PT's Handling Dr. told Plaintiff
he would address it. Consulting Further the
Plaintiff questioned Dr. as to the the truth
of Marchaks informing that Zydus is
Manufacturer of the pills he received on
prior dates and at present. Dr. Confirmed.

82. On subsequent date of 1,24,2020
PT. Galan mishandled Plaintiff's pill via Touching
it and when asked to pop it from package
Directly into cup Galan attempted to --
Humiliate Plaintiff via Bowing, waving his
hand and Loudly stating "Thank you for
allowing me to Grace your Presence," C/O. Dun
escorting him.

83. On the date of 2,1,2021 PT. Florez Twice Popped a Pill From the Package into her Hand toying with Plaintiff intending to Deter his accepting the Pill For her dragging her Finger arround inside the cup and stating "I'm only touching the Cup, not the Pill, now What," while she Laughed

84. On the date of 2,3,2021 PT. - - Gonzalez, alluded to, supra, in Paragraph(s) 65 - 66, she did Med - Pass and approaching Plaintiff's Cell she with Gloved Hands Scratched her Bare Face then Popped the Pill into the same hand and using Finger,s, grabbed the Pill and dropped it into the cup.

85. Attempting to give the Pill to the Plaintiff "No, No," he told her. "Can you Please Pop the Pill directly into the cup?" he asked "Hammler, I do it this way all the time!" Gonzalez said raising her voice "You just Scratched your Face with the same Hand," Plaintiff pointed out to her "No I didn't I used the other one, do you want this?" She said in harsh tone, echoing the same take this Covid-19 tainted Pill or leave it Statement that PT. Hernandez made.

42

86. In Response to Gonzalez's take Covid-19 or leave it she violated his First Amendment Right to suggestive speech where she forced him to forego the Right to take the pill in order to retain another Right, i.e. Personal Safety or to be Protected From Contracting a Deadly Disease under the 8th Amendment. "No, keep it. You just Denied me my meds," plaintiff admonished. "No I didn't," Gonzalez stated. "We'll see about that," plaintiff told her then walked away.

87. Few minutes latter Gonzalez returned to do Psych Rounds. She instantly started Arguing with plaintiff that she "Always does" meds that way." Annoyed, the Plaintiff Announced on the Tier what she had done. "I had it already, I cant give it to any one," she yelled. "That's not true," Plaintiff told other patients. "They know you and they know me. Their all laughing at you!" she yelled Mockingly. "No, Bitch their gonna laugh at you," Plaintiff told her. "You dont scare me, supervisor(s) know you complain about everything," she stated. "Yeah, and you dont have to pay For the Lawsuits, hun?" "That's Right, I dont, and I aint gonna pay

you For nothing cause your not gonna win anything. I've been here For 13 years and..." her words Trailed off as she began to walk away. Plaintiff was Forced to go without meds that date.

88. The PT(s) mishandling of meds is a Pattern of Conduct that is being tolo-rated in on-going line where on 12,23,20 PT. Racendez gave Prisoner/Patient Rodriguez CDCR #BA7319 the wrong Pills, and on 2,18,2021 a PT. (name unknown) Conveyed all Patient(s) Pills to C/O. Rowell directing him to go onto the Unit Floor to pass out pills where Rowell is not Licensed to -- ever Handle "Hot meds," and such is an illegal FDA Violation. ~~Exh "G" Are copies of Patient Declarations X 2 re Events, so dated, or, Exh "H" E-Mails dated 7,9,2020~~ [1]

89. Plaintiff is being Placed in Imminent Danger of Contracting Covid-19 in the PT(s) mishandling his Pills and subjected to Long-Term Damages to his Physical Condition and Chemical Balance via Recurring -- Withdrawals From all the above alleged.
[1] The E-Mails ~~contained in Exh "H"~~ Evidence that Defendant(s) Agents Know of Issues and Conspire to -- Justify PT(s) acts, ~~reading E-Mails From page 3 to 1 backwards, bottom to Top in order~~

44

90. At all times mentioned herein each of the named Defendant(s) Acts and Omissions were intentional, unjustifiable, unprovoked, Malicious, Wanton, Arbitrary, and Opressive, taken solely for the purpose of inflicting Pain, Mental Distress, and injury, with Dispicable and Evil intent to do all the above, Consciously Disregarding Plaintiff's Rights, acting to Humiliate him.

91. Plaintiff alleges that not one of the alleged acts and Omissions were taken with a Penological Goal in interest, or in reason.

92. It is further alleged that where the allegations of Retaliation are in issue and the Element of a Chilling effect are, is to be met Plaintiff alleges that the Constitutional Violations themself are -- Adverse enough to meet the Element under Rhodes v. Robinson, 403 F.3d 559, 568 n.11 (9th Cir. 2005).

93. All the above incorporated Plaintiff alleges that the Danger is imminent and on-going were on date of 5,27,2022 he was placed on Quarantine due to being vn-

reasonably exposed to the new variant of
Covid-19 by Jane Doe, Doe No. 1 the PT. who
did med-pass and whom Plaintiff had on a
number of date(s) Prior to 5,27,22 informed
Defendant(s) Bell-sprinkel and Halloran, along
with Doe(s) 2-10 was acting to expose him
to Covid. For her (Doe No. 1) Refusing to Forego
Touching the medication and the inside of
the Soflé cups used to convey Pills to Plain-
tiff.

94. Defendant(s) Doe No. 1, Halloran, and Bell-
Sprinkel are all herein sued in their individual
Capacities. Halloran was and is at all time herein
mentioned a Psychiatrist at CSPS., Doe No. 1 was
and is at all times mentioned herein a PT. at
CSPS., and Bell-Sprinkell was and is at all
times mentioned herein a Psychologist at CSPS.
As is alleged, supra, in subsection C, all the
statement equally apply to there three.

95. On or about date of 5,27,22 Doe No.1
passed out medication and in mishandling said
Meds via placing Fingers that were unclean in
Soflé cup, Touching the Pills as well, where she
knew she was not to do so Fore she could
give, and or expose Plaintiff to Covid-19 She
did expose him to Covid, being indifferent,

46

# E. Legal Claims

### 1. Claim One: Violation (Viol.) of 1st. Amendment (Amend.), Free Speech, Suggestive, to be included.

Plaintiff incorporates by reference Paragraphs 1 - 92, supra, as fully set forth for cause, and gives Notice that unless otherwise stated in the Text below said Paragraphs are to be applied to all Claims herein, incorporated as fully Set forth for cause.

Here, it is further alleged that the -- Defendant(s) Contreras violated his Rights as is alleged in paragraph No. 25, supra, Leal and Rikli also as is alleged, supra, in Paragraph's 45-47, and 50.

### 2. Claim Two: Viol. OF 1st Amend., Retaliation, Selective Enforcement.

Plaintiff alleges that each of the named Defendant(s) are Liable.

### 3. Claim Three: Viol. OF 8th Amend., Cruel And Unusual Punishment

Plaintiff alleges that each of the named Defendant(s) are liable as each had actual Knowledge of the Facts and held a Duty to act upon them, Fore Knowing the natural and Probable consequence of neglecting to act, or Reasonably should have Known.

4. Claim Four: Viol. OF 8th Amend., Deliberate Indifference.

Defendant(s) Zydus, Trigen, and Rising Knew or had reason to Know that Plaintiff was going to be injured in all manners -- alleged where they in Contracting with the CDCR. neglected to include clause(s) in their Contracts to ensure that Their Product(s) being supplies and used were not used in immoral or harmful manner, as those whereby Plaintiff's injuries Derived made Possible by Zydus, Trigen and Rising, with all other named Defendant(s) held Liable for their acts and Omissions alleged, all being integral Participant(s) adding to the Plaintiff's On-Set Depression, etc., where all Failed to act to Prevent Plaintiff's being injured to include date of 5, 27, 2022 and On-going where Danger remains imminent

    5. Claim Five: Liability For Unconsti-
tutional Policies, Practices, and Customs
under 42 U.S.C. § 1983.

    Plaintiff alleges that on and for some
time Prior to the date of 3, 4, 2020 and
continuing to date Defendant(s) Zydus, Trigen,
Rising, and each of the other named Def-
endant(s) Deprived Plaintiff of Rights in that
said Defendant(s) in their Authorative Role(s)
as Supplier(s) of Drugs/Pills, Respectively,
at their assigned Position(s) in the -
Scheme of conveying said Pills to Plaintiff
acted with Reckless and Deliberate in-
difference, Knowingly maintaining, enforcing
, and applying Officially Recognized Customs
, Policies, and Practices of:

    <u>Relating to Zydus, Trigen, and Rising.</u>

    a. Allowing their Products to be issued
in violation of FDA. Mandates, CDCR. Rules
Regulations and Policies,

    b. Contracting with State Facilities
and Omitting to include Clauses aimed at
Protecting Prisoners/Patients,

49

c. Maintaining Grossly inadequed Pro-
cedures or none by which Prisoner/patients
can Report Rampant illegal Distribution and
mishandling of their Products by Contractors
, i.e, all other named Defendant(s) that Zydus
, Trigen and Rising Knew or reasonabley should
have Known had the Dangerous Propensities
to mishandle their Products.

All Other named Defendant(s)

a. OF, For Mishandling Medications,

b OF Failing to Follow Policies related to
issuing and Prescribing Pills,

c. OF not using the Lap-Tops and the
Pill Package Scanner's to scan Pills beFor
conveying them,

d. Adhering to Code OF Silence to cover
up wrong doing rather than addressing it to
correct it [1] Allowing PlaintiFF to be Exposed [2]
[1] Again, in Reading E-mails ~~contained in~~ Exh "H", a
Reasonable Person can infer that Defendant(s) Agent
Know oF the issue but to JustiFy it have twisted Facts
showing Evil Intent. Fed. R. Evid. 201, And 803(8).
[2] to new Variant oF Covid-19 on 5,27,2022, and
all past Variants.                  50

6. Claim Six: Negligent Tort, under
28 U.S.C. § 1367, Cal. Govt. Code § 844.6(b).

Plaintiff alleges that each of the named
Defendant(s) Owed a Duty Of Care to him
and were required to use reasonable Diligence
to ensure that he was not injured by Their
acts and Omissions. Defendant(s) Acts and
Omissions were Negligent and Reckless, includ-
ing but not limited to:

Relating to Zydus, Trigen, and Rising

a. Negligent Oversight to ensure that
the CDCR and those that they Contract with
are in Handling, using, and Distributing Their
Products are adhering to the Uniform Com-
mercial Code (U.C.C.), strict Liability,

b. Negligent in Failing to ensure that
implied Warranties, and Merchant Ability
are not Breached in Those that they Con-
tract with Dispensing their Products,

c. Negligent in Failing to include - -
Clauses in their Contracts directed at
ensuring that their Products were not
used, Handled or Supplies to Prisoner/Patients

51

in manners alleged, herein.

_Relating to Barba, Elledge, Mailan, -- Marchak, and Gharakhanian._

a. negligent in Failing to correct the issues with the Effexor once informed,

b. Negligent in Discontinuing Effexor and refusing to restart it claiming that Plaintiff was Bipoler when he had not been Diagnosed as such.

c. negligent in allowing PT.(s) to -- continue mishandling meds to date.

_Relating to Leal, Chavez, Rikli, Hernandez, Gonzalez, Contrares._

a. negligent Handling of Medication in conveying the wrong Pills, and not using the scanner in accord with Policies

_Relating to Martinez_

a. negligent in Failing to inform -- Dr. that she had not asked Plaintiff to Sign a CDCR MH-7450 on date of 5,28,20,

52

b. Negligent Tactics in Handling Plaintiff's asserting Right to read befor signing the CDCR. MH-7450 on 4,10,2020.

All Defendant(s)

a. Negligent in Omitting Facts and then adding False Facts in Charting where said Charts are to Reflect only truth.

7. Intentional Tort Of Slander, under 28 U.S.C. § 1367.

Plaintiff alleges that each of the PT(s) slandered him via Libel in charting that he Refused his meds and then omitting to Chart Reasons meds were not issued causing the Psychiatrist(s) to Ridicule him and hold him in Contempt For noting in the Charts only "Refusals".

However, Leal and Rikli, in Preparing the False RVR. and Charts related to the date of 4,13,2020 are alleged to have Further Slandered Plaintiff via Libel acting to expose him to to Hatred, Ridicule, and Jeopardy oF loss of time Served in the --

Violation Hearing Process and where the
related notes have been reference in
TDTT Mental Health screenings and have
been alluded to in 602 Responses to call
Plaintiff violent.

DeFendant Martinez, where she told
Dr. Plaintiff Refused to sign Contract on
5,28,2020 and caused EFFexor to be
Discontinued, a special injury.

Plaintiff alleges that Cal. Civil Code §§
44, 45, and 46 all apply and DeFendant(s) are
Responsible for his Damages.

8. Claim Eight: Intentional InFliction
OF Emotional Distress, under 28 U.S.C. §1367.

Plaintiff alleges that each oF the
named DeFendant(s) are Liable, their actions
and conduct at the respective times alleged
being outrageous, Recless and intended
to cause Plaintiff Distress, and did act
-- to cause severe Emotional SuFFering
over a Great and significant Spands oF
time Documented where Plaintiff was
subjected to Repeated Withdrawal(s),
Denied Treatment via Medication over a

spand of six months, and intentionally told he had been Diagnosed Bipolar only to keep him from asserting Rights to have medication Corrected, a proximate cause of his Distress, and the Public -- would be shocked to become aware that their Tax Dollars are paying so-called Civil Servents as Defendant(s) to aid in Rehabilitation of Mentally inept Prisoners Some of whom will be rejoining the Public but not So Rehabilitated fore -- Defendant(s) under Performing their Duties Owed to the Public.

### F. Prayer For Relief

WHEREFORE, Plaintiff Requests entry of Judgment in his Favor against Defendant(s) as Follows:

1. Compensatory Damages in Amount of $20,000,000 on each Separate Claim and from each Defendant named,

2. Punitive Damages in Amount of $50,000,000 on each Separate Claim and from each Defendant named,

3. For Costs of Bringing this Action, Investigative, And Attorney Fee(s) if incurred

4. For Interest.

5. Injunctive to compel Zydus to ensure that their Agents are not in the Conveyance of their Product Handling in a manner exposing Plaintiff to Covid-19.[1]

Date: 6, 10, 2022        Respectfully Submitted,

_Allen H._

In Pro Par.

Verification

I have Read the Foregoing Complaint and hereby Verify that Matters alleged therein are true, except as to Matters alleged on information and as to those I believe them to be true and Factual. I Certify/Swear under the Penalty of Perjury that this is true and Correct.

Date: 6/10/2022        _Allen H._

Plaintiff

[1] And address the other Side Effects of the Medication alluded to in Paragraph No.8, exposing Plaintiff to Elements of unreasonable Cold at Present, On-going.

56

*Hammler*

V. *Zydus, et al*
*Clerk, et al.*

Case Number: ~~CV~~ AH 6/10/22

PROOF OF SERVICE

AH 6/10/22

I hereby certify that on ~~H-2-2020~~ , I served a copy of
~~-- COMPLAINT UNDER Sec. 1983 ALLEGING IMMINENT-~~
the attatched ~~Reply To Motion To Compell~~   DANGER/DEATH.
by placing a copy in a postage paid envelope addressed to the
person(s) hereinafter listed, by depositing said envelope in the
United States Mail at *USPS / Sacramento*           :
(List name and address of each
defendant or attorney served)

U.S. Dist. Ct.                    AH 6/10/22
Eastern Dist. OF Cal. Sac.        Cal. Atty. Gen.
~~2500 Tulare St., rm 1501~~      ~~1300 "I" St. #125~~
~~Fresno, CA. 93721~~             ~~Sacramento, CA. 94244~~
501 "I" Street, Ste. 4-200
Sacramento, CA. 95814

I declare under penalty of perjury that the foregoing is
true and correct.

*Allen Hammler*
(Signature of person completing
service)

57